# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LEJ MANAGEMENT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cv-02662-TWP-TAB |
| | ) | |
| MORRIS INVEST, LLC, and | ) | |
| CLAYTON MORRIS, | ) | |
| | ) | |
| Defendants. | ) | |

## ENTRY ON DEFENDANTS' PARTIAL MOTION TO DISMISS

This matter is before the Court on a Partial Motion to Dismiss filed by Defendants Morris Invest, LLC ("Morris Invest") and Clayton Morris ("Morris") (collectively, the "Defendants") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).  (Filing No. 15.)  The Plaintiff LEJ Management, LLC ("LEJ Management") initiated this action by filing a Complaint alleging six Counts: (1) Breach of Contract, (2) Promissory Estoppel, (3) Fraud/Deception, (4) Conversion, (5) Negligence, and (6) Violation of the Indiana Deceptive Consumer Sales Act.  (Filing No. 1.) Defendants seek dismissal of a portion of Count 1 and dismissal of the five other Counts on a variety of different grounds.  For the following reasons, Defendants' Partial Motion to Dismiss is **granted in part and denied in part**.

## I.    BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of LEJ Management as the non-movant. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008). LEJ Management alleges the following facts in its Complaint. (Filing No. 1.)

LEJ Management purchased a real estate investment property from the Defendants through what appears to be a Ponzi scheme operated by the Defendants. *Id.* at 1-2. LEJ Management is a company registered in Georgia, and the property at issue is located in Marion County, Indianapolis, Indiana. *Id.* An individual named Edwin Reina is the only member of LEJ Management. *Id.* LEJ Management contends that is purchased real estate investment property from Defendants

Morris is a self-described real estate investor, host of the *Investing in Real Estate* podcast, and a former co-host on the Fox & Friends Weekend show. *Id.* He is a co-founder and owner of Morris Invest. *Id.* Morris claims to have started Morris Invest to help individuals attain financial freedom and grow their personal wealth through passive income. *Id.* He resides in and is a citizen of New Jersey. *Id.* Morris Invest has been so dominated by Morris and Morris Invest's separate identity so ignored that Morris Invest primarily transacts Morris' business instead of its own and can be called Morris' alter ego. *Id.* at 3.

Morris Invest is a Delaware limited-liability company which purports to help investors buy and renovate investment properties. *Id.* The company promises to fill those investment properties with paying tenants, thereby providing its investors with a "turnkey" rental property. *Id.* The members of Morris Invest are two revocable trusts: the Clayton Morris Revocable Trust and the Natali Morris Revocable Trust. *Id.* The beneficiaries of the trusts are Clayton Morris, his wife Natali Morris, and their children. *Id.* The trustees of both trusts are Clayton and Natali Morris. *Id.*

Morris Invest lures potential investors by advertising its program through blogs, YouTube videos, and a podcast. *Id.* at 4. It claims to have a three-step wealth building plan. First, prospective investors schedule a consultation with Morris Invest, and Morris Invest has a thirty-minute telephone call with the prospective investor to learn about his or her investment goals. *Id.* Second, the prospective investor selects a property offered by Morris Invest. *Id.* And third, Morris

Invest handles the property identification and renovation, finds and secures tenants, and sells the investor the property in habitable condition, and all the investor needs to do is collect the rent checks. *Id.* at 4-5.

But those claims are not accurate. It turns out that Morris Invest and Morris are only marketers. *Id.* at 5. They use affiliates to identify, sell, renovate, locate tenants for, and manage the rental properties they convince investors to buy. *Id.* Defendants hid the fact that another company would handle the renovation and installation of tenants from LEJ Management when discussing the investment. *Id.* LEJ Management believed it was dealing only with the Defendants. *Id.* In Indiana, Defendants engaged Indy Jax Wealth Holdings, LLC, Indy Jax Properties, LLC (collectively, "Indy Jax"), and Oceanpointe Investments Limited ("Oceanpointe") to handle identification, sale, renovation, tenant location, and property management of the rental property. *Id.* Defendants now say their deals with Indy Jax and Oceanpointe were arms-length transactions, but when discussing the investment Morris told LEJ Management that Morris Invest owned Oceanpointe. *Id.* at 5-6.

Morris persuaded hundreds of investors to purchase rental properties in Marion County during 2017 and 2018. *Id.* at 6. Defendants did not evaluate whether their investors were sophisticated, accredited, or otherwise had any particular financial acumen or experience in real estate investing. *Id.* Instead, they appear to have targeted inexperienced investors, many of whom ultimately lost large proportions of their savings or retirement funds in the scheme. *Id.*

In service of their arrangement with Morris Invest, Oceanpointe and Indy Jax purchased hundreds of homes in the Indianapolis area. *Id.* Many were purchased at tax sales. *Id.* Unbeknownst to LEJ Management, Defendants matched their clients with Oceanpointe's

properties and then Oceanpointe profited from the sale and was tasked with renovating, renting, and managing the properties. *Id.*

On April 10, 2018, LEJ Management purchased a duplex from and through the Defendants to be used as rental properties for the purpose of generating "passive" rental income. *Id.* at 7, 9. It paid $60,500.00 for the property, which it was told included renovation costs. *Id.* at 9. LEJ Management was told that Morris Invest would renovate the property using the purchase funds LEJ Management provided. *Id.* at 7. LEJ Management was told that the Defendants would find, screen, and secure tenants for the duplex. *Id.* The Defendants represented that, for the money invested, LEJ Management would receive a "turnkey" rental property, complete with paying tenant and property management services. *Id.*

LEJ Management has not received any rent checks related to the property. *Id.* It eventually learned that the property had not been renovated. *Id.* It also learned that the property was not being rented by tenants and was sitting vacant. *Id.* Eventually, LEJ Management learned that Oceanpointe and another unspecified company had been tasked with renovating and managing the property and securing tenants. *Id.*

Defendants sold LEJ Management a "passive income" program that Defendants knew was not what it was portrayed to be—a means for LEJ Management to invest in "turnkey" rental properties generating immediate income. *Id.* at 8. Defendants intentionally and materially misrepresented the nature of the program they offered and the nature of the investment products they sold. *Id.* Defendants knew, at the time they made these misrepresentations, that their program did not provide the features it advertised. *Id.* Defendants have been operating a Ponzi scheme, using the purchase funds paid by new investors to send fabricated rent checks to earlier investors. *Id.* LEJ Management did not have any role in selecting or analyzing the duplex it purchased and

4

now it owes thousands of dollars for renovation work, code violations, and tax liens.  *Id.*  It also paid over $60,000.00 for a property it now views as worthless.  *Id.*

On June 28, 2019, LEJ Management filed the instant Complaint.  ([Filing No. 1](#).)  It seeks damages of $181,500.00 plus lost rental income on these six counts: (1) Breach of Contract, (2) Promissory Estoppel, (3) Fraud/Deception, (4) Conversion, (5) Negligence, and (6) Violation of the Indiana Deceptive Consumer Sales Act.  ([Filing No. 1](#).)  Defendants have moved to dismiss all but portions of Count 1 of LEJ Management's Complaint.  ([Filing No. 15](#).)  After outlining the relevant legal standards, the Court will address each count separately.

## II.   LEGAL STANDARDS

### A.   Dismissal Under Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff.  *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact."  *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. Civ. P. 8(a)(2).  In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level."  550 U.S. 544, 555 (2007).  Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient.  *Id.*; *see also Bissessur v. Ind. Univ. Bd. or Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements

of a claim without factual support").  The allegations must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citations and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

**B.** **Dismissal Under Fed. R. Civ. P. 9(b)**

Federal Rule of Civil Procedure 9(b) states, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  If a claim rests on deceptive conduct, the complaint must meet Rule 9(b)'s heightened pleading standard.  The Seventh Circuit has interpreted this particular requirement to mean that the complaint must identify the "who, what, when, where, and how" of the alleged fraud.  *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (citing *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019)).

### III.     DISCUSSION

**A.** **Count 1 - Breach of Contract**

To recover for a breach of contract under Indiana law, "a plaintiff must prove that: (1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damage as a result of the defendant's breach." *Collins v. McKinney*, 871 N.E.2d 363, 370 (Ind. Ct. App. 2007) (citing *Breeding v. Kyle's. Inc.*, 831 N.E.2d 188, 191 (Ind. Ct. App. 2005)).  LEJ Management attached to its Complaint a five-page purchase agreement signed by Edwin Reina and Morris.

(Filing No. 1-1.)  The Complaint alleges that LEJ Management entered into this agreement with Defendants and that "Defendants breached the Agreement with Plaintiff by accepting the funds from Plaintiff intended to purchase and rehabilitate the property, then failing to rehabilitate the property." (Filing No. 1 at 10.) The Complaint also alleges that Defendants breached the agreement by "failing to identify, screen, and secure tenants for the Rental Property" and "failing to fulfill their property management obligations".  *Id.*  "As a result of Defendants' breach of contract, Plaintiff suffered damages." *Id.*

Defendants ask for partial dismissal of this count for two reasons.  First, they argue that the purchase agreement contradicts two of the three alleged bases for LEJ Management's breach of contract claim because it contains no tenant-related or property management obligations.  Second, Defendants argue Morris Invest is neither a party nor a signatory to the agreement, and thus Count 1 should be dismissed as to Morris Invest. (Filing No. 16 at 6-8.) Therefore, according to the Defendants, the only portion of this count that survives their Motion to Dismiss is the claim based on failure to renovate the property leveled against Morris.

The Court is only concerned with Defendants' second argument.  Whether the purchase agreement supports all three rationales for LEJ Management's breach of contract claim or only one is irrelevant—both parties agree that the Complaint articulates at least one valid rationale supporting the claim.  The extent of the breach—whether Defendants were responsible for tenant-related and property management services as well as renovation services—will only matter to the issue of damages if there is ultimately a finding of liability.

But the question of whether LEJ Management has stated a claim for breach of contract against Morris Invest is appropriate for resolution on the Motion to Dismiss.  Defendants argue that Morris Invest is not a party or a signatory to the purchase agreement and cite Indiana law

holding that a person generally cannot breach a contract to which he was not a party.  (Filing No. 16 at 8.)  LEJ Management responds that it pleaded facts supporting an inference that Morris' signature on the agreement was permitted or ratified by Morris Invest and that Morris Invest accepted the benefits of the contract.  (Filing No. 23 at 11.)  It specifically points to passages from the Complaint indicating Morris was one of the two principals of Morris Invest and that the company and the man were virtually indistinct from each other such that Morris Invest was Morris' "alter ego."  (Filing No. 1 at 2-3.)  LEJ Management does not cite any caselaw supporting its argument.

The Court agrees with LEJ Management.  "Normally the parties to a contract can be identified as a matter of law by the very terms of the contract, as long as there is no ambiguity." *Implement Serv., Inc. v. Tecumseh Prods. Co.*, 726 F.Supp. 1171, 1182 (S.D. Ind. 1989) (citing *Sunman-Dearborn Cmty. Sch. Corp. v. Kral-Zepf-Freitag & Assocs.*, 338 N.E.2d 707, 709 (Ind. Ct. App. 1975)). "Generally, only a party to the contract can be held liable for its breach because contractual obligations are personal in nature." *Rodriguez v. Tech Credit Union Corp.*, 824 N.E.2d 442, 447 (Ind. Ct. App. 2005).  Nevertheless, liability for breach of contract can attach to a principal if it has ratified the contract made by its agent.  "Ratification is a question of fact and is defined as adoption of that which was done for and in the name of another without authority." *Dominion Invs. V. Yasechko*, 767 F.Supp. 1460, 1469 (N.D. Ind. 1991) (citing *Beneficial Mortg. Co. v. Powers*, 550 N.E.2d 793, 796 (Ind. App. 1990)).  A ratification does not occur unless it appears that act was performed for and on behalf of another, and not on account of the actor himself.  *Id.* (citations omitted).  A principal can ratify an agent's unauthorized acts through silence and acceptance of the benefits attaching to such acts.  *Id.* (citing *Wright v. State*, 363 N.E.2d 1221 (Ind. 1977)).

Three allegations in the Complaint convince the Court that Morris Invest ratified the purchase agreement. First, the Complaint alleges Morris Invest is owned entirely by Morris and his family.  (Filing No. 1 at 3.)  A stake in the principal company is evidence of ratification.  *See Yasechko*, 767 F.Supp. at 1468 (finding ratification where signer owned a 90% share of a company that had mutual interests as the principal company).

Second, the allegations in the Complaint show significant ties between Morris and Morris Invest beyond ownership.  The Complaint states that "Morris Invest has been so dominated by Mr. Morris and Morris Invest's separate entity so ignored that Morris Invest primarily transacts Mr. Morris's business instead of its own and can be called Mr. Morris's alter ego."  (Filing No. 1 at 3.) The Complaint shows that the email address LEJ Management corresponded with while sorting out the details of the agreement was "clayton@morrisinvest.com."  *Id.* at 6.  And LEJ Management was initially contacted not by Morris, but by "a representative of Defendant" named James Federico.  *Id.* at 9.  These allegations support an inference of ratification.

And third, the Complaint alleges that Morris Invest benefitted from the purchase agreement. The Complaint claims that LEJ Management "was told by Defendants that Morris Invest would handle everything pertaining to the Rental Property."  *Id.* at 5.  It also states that both Defendants received money from the arrangement—"Defendants breached the Agreement with Plaintiff by accepting funds from Plaintiff intended to purchase and rehabilitate the property, then failing to rehabilitate the property." *Id.* at 10. These allegations that Morris Invest accepted the benefits of the purchase agreement allow an inference of ratification.

Because the Complaint alleges that Morris Invest ratified the purchase agreement, the Court will not dismiss the breach of contract claim against Morris Invest.  The Court **denies** Defendants' Motion to Dismiss as to Count 1.

**B.**      **Counts 2 and 3 – Promissory Estoppel and Fraud/Deception**

The Court addresses Count 2: Promissory Estoppel, and Count 3: Fraud/Deception, together because Defendants' Motion to Dismiss levels overlapping attacks on each claim. Defendants urge the Court to dismiss both counts for two reasons, (1) neither count is pleaded with the specificity required by Fed. R. Civ. P. 9(b), and (2) both counts are duplicative of LEJ Management's breach of contract claim because they do not allege a distinct injury. (Filing No. 16 at 8-17.) Defendants make one additional argument in opposition to LEJ Management's Fraud claim—that it must be dismissed because the allegations of misrepresentations relate to future conduct, not past or existing facts. *Id.* at 14-16.

**1.**      **Rule 9(b) Compliance**

Counts 2 and 3 of LEJ Management's Complaint rest on allegations of deceptive conduct, and therefore must meet Rule 9(b)'s heightened pleading standard. The Seventh Circuit has interpreted Rule 9(b) to mean that the complaint must identify the "who, what, when, where, and how" of the alleged fraud. *Benson,* 944 F.3d at 646. Defendants argue that LEJ Management's promissory estoppel and fraud claims are not pled with sufficient particularity to satisfy Rule 9(b).

As to the promissory estoppel claim, Defendants argue that LEJ Management "has pleaded only threadbare legal conclusions and conclusory allegations merely attempting to recite some of the legal elements of the cause of action." (Filing No. 16 at 10.) With regard to the fraud claim, Defendants argue that "the pleaded allegations fail to adequately allege the elements of fraud, or identify the who, what, when, where and how of any alleged misrepresentations" and that LEJ Management's "conclusory allegations and vague narratives lack substance." *Id.* at 13. Specifically, Defendants claim that the Complaint does not adequately allege "who made any

statement," "when any statement was made," where or how a statement was made," "or how any statement was false."  *Id.* at 14.

The Court disagrees. The Complaint alleges that James Federico, a representative of Defendants, made misrepresentations to LEJ Management.  (Filing No. 1 at 9.)  The Complaint also indicates that LEJ Management was in direct correspondence with the person operating the "clayton@morrisinvest.com" email account and that whoever operated that account made misrepresentations during their correspondence.  *Id.* at 6.

The Complaint clearly lays out the alleged fraud scheme. It alleges that Defendants, through their representatives, advertised fully serviced or "turnkey" investment properties to unsophisticated potential investors.  The Complaint contends that the Defendants stated they would handle all services relating to renovation and rental.  But after LEJ Management made its payment and did not receive the rent checks it was promised, it learned that Defendants had contracted out those services to third parties.  The property was never rented or renovated, and it never returned any capital to LEJ Management.

The where and when of the fraud are pled with less particularity but still satisfy the requirements of Rule 9(b).  The Complaint alleges that the misrepresentations were made via telephone or email while LEJ Management was in Georgia and Defendants were in New Jersey. *Id.* at 2-4, 9.  And the Complaint dates the misrepresentations to around April 10, 2018, the date of the sale.  *Id.* at 9. The Complaint also contains a screen capture purporting to be a misrepresentation made via email on June 28, 2017—where a person operating the clayton@morrisinvest.com email address claimed to be the owner of "Oceanpoint holdings," which the Complaint alleges is not related to Defendants. *Id.* at 6. This satisfies the Seventh Circuit's interpretation of 9(b)—that the Complaint give "the first paragraph of any newspaper

story" and put the Defendants on notice of the claims leveled against them. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

### 2.   <u>Redundant of Breach of Contract Claim</u>

Defendants advocate dismissal on the grounds that "the conduct at the heart of the promissory-estoppel claim is near verbatim the conduct that forms the basis for the Plaintiff's breach-of-contract claim" and LEJ Management's "fraud claim is merely a repackaged version of its breach-of-contract claim." (Filing No. 16 at 10, 16.)

The Court finds that LEJ Management's promissory estoppel claim may not be coextensive of its breach of contract claim. The Complaint asserts that Defendants breached this promise: "that Defendants would sell the Rental Property to Plaintiff, rehabilitate the property, identify tenants, screen tenants, secure tenants, manage the Rental Property, and provide rent checks to Plaintiff." (Filing No. 1 at 10.) While its breach of contract claim identifies breaches in the same areas, the Defendants have argued that the purchase agreement does not contain any tenant-related or property management obligations. If the factfinder ultimately agrees with that argument, a failure to provide tenant-related and property management obligations could only be remedied under LEJ Management's promissory estoppel claim, not its breach of contract claim. Without an answer to that question, the Court declines to dismiss LEJ Management's promissory estoppel claim. Fed. R. Civ. P. 8(d) establishes a party's ability to "plead breach of an express contract, breach of an implied contract, and promissory estoppel in the alternative." *CoMentis, Inc. v. Purdue Research Found.*, 765 F.Supp.2d 1092, 1098 (N.D. Ind. 2011).

For similar reasons, dismissal of LEJ Management's fraud claim as duplicative of its breach of contract claim would be premature. Under Indiana law, "a claimant who brings both a breach of contract and a fraud claim must prove that (1) the breaching party committed the separate and

independent tort of fraud; and (2) the fraud resulted in injury distinct from that resulting from the breach." *Tobin v. Ruman*, 819 N.E.2d 78, 86 (Ind. Ct. App. 2004).  The relevant inquiry is not what the claimant has pled, but what he can ultimately prove after the close of discovery. The Court declines to dismiss LEJ Management's fraud claim on the ground that it is redundant of its breach of contract claim.

### 3.   Misrepresentations Relate to Future Conduct

Finally, Defendants argue that the allegations of misrepresentations in the Complaint relate to future conduct, not past or existing fact. (Filing No. 16 at 14.) The essential elements of fraud in Indiana are (1) a material misrepresentation of past or existing facts; (2) made with knowledge or reckless ignorance of falsity; (3) which caused the claimant to rely upon the misrepresentation to the claimant's detriment. *Siegel v. Williams*, 818 N.E.2d 510, 515 (Ind. Ct. App. 2004). Defendants argue that the Complaint does not allege any misrepresentation of past or existing facts, and therefore must be dismissed.

Defendants quote paragraph 58 of the Complaint, which states "Defendants Morris Invest and Clayton Morris knowingly and intentionally made false statements of important existing facts, namely, that Morris Invest and Clayton Morris would sell the Rental Property to Plaintiff, rehabilitate the property, identify tenants, screen tenants, secure tenants, manage the Rental Property, and provide rent checks to Plaintiff."  (Filing No. 1 at 11.)  Defendants correctly point out that the promises they allegedly made are not "existing facts," and thus cannot support a fraud claim.

In response, LEJ Management notes that Indiana courts have found that statements concerning actions to be taken in the future can form the basis of fraud when facts exist to make the statements actually false.  (Filing No. 23 at 17 (quoting *Ballard v. Allstate Ins. Co.*, 2013 WL

6388400 at *2 (S.D. Ind. Dec. 6, 2013)).) In support it cites *Reginald Martin Agency, Inc. v. Conseco Med. Ins. Co.*, 478 F.Supp.2d 1076 (S.D. Ind. 2007) (denying summary judgment on fraud claim where defendant corporation misrepresented its profitability to achieve sale) and *Scott v. Bodor, Inc.*, 571 N.E.2d 313 (Ind. Ct. App. 1991) (affirming denial of summary judgment on fraud claim because defendants' misrepresentations about future conduct were misstatements concerning a plan already in place).

These two cases do not control here because their facts are distinguishable from the allegations pled in the Complaint. First, in *Reginald Martin*, the plaintiffs alleged that the defendant made an actual misrepresentation of a verifiable fact—its prior profitability—in order to induce plaintiffs to purchase the company.  478 F.Supp.2d at 1090 ("The record before the Court when viewed in a light most favorable to Plaintiffs is that [Defendant] repeatedly and emphatically stated it was profitable during periods of time it actually knew it was hemorrhaging millions of dollars.").  The Complaint in this case does not contain any allegation that Defendants represented the property was creating passive income before LEJ Management agreed to buy it.[1]

And in *Scott*, the court found that "defendants' representations concerning Bodor's ability to retrieve funds from the plan were representations concerning past or existing facts—the present features or terms of the proposed plan—and not mere statements of opinion or promises of future action." 571 N.E.2d at 320. This case more closely resembles certain facts pled in the Complaint.

---

[1] The same point distinguishes other cases LEJ Management relies on to argue that it has properly pled fraud. In *7E Fit Spa Licensing Group LLC v. Dier*, 2016 WL 4943824, *7 (S.D. Ind. Sept. 16, 2016), the court allowed a fraud claim to survive because the counterclaimants had pled that the plaintiffs "knowingly misrepresented that 7E Licensing was the owner of the 7E FIT SPA trademark and the owner of the domain name registrations that incorporate the 7E FIT SPA. In *Iom Grain, LLC v. Ill. Crop Imp. Ass'n, Inc.*, 2015 WL 195988, *7 (N.D. Ind. Jan. 14, 2015) the court found that a reasonable jury could conclude that the defendant had made "an assurance of ZEA's financial stability, including its creditworthiness." And in *Ello v. Brinton*, 2015 WL 7016462, *3 (N.D. Ind. Nov. 10, 2015) the court determined that plaintiff had alleged "misrepresentations concerning past or existing facts—namely, Seven Peaks' financial condition and business credentials at the time of the contract negotiations." Each of these cases involves a claimant that pled that the alleged fraud involved a misrepresentations of the defendant's financial health, which the Complaint here does not allege.

When the Complaint frames the Defendants' conduct as a wide-ranging scheme, the facts seem very similar to the facts of *Scott*. The Complaint alleges that "[c]ontrary to its express claims to Plaintiff and other investors, Morris Invest and Clayton Morris are only marketers. They use affiliates to actually identify, sell, rehabilitate, locate tenants for, and manage the Rental Properties they convince their investors, including the Plaintiff, to purchase." (Filing No. 1 at 5.) This allegation indicates Defendants have a plan in place and misrepresented that plan to LEJ Management, just like the defendants did in *Scott*. But when looking at the substance of the fraud count in the Complaint, it is clear the thrust is broken promises, not misrepresentations of verifiable facts. The Complaint alleges the Defendants "knowingly and intentionally made false statements of important existing facts," and then goes on to name those facts—"that [Defendants] would sell the Rental Property to Plaintiff, rehabilitate the property, identify tenants, screen tenants, secure tenants, manage the Rental Property, and provide rent checks to Plaintiff." *Id.* at 11. That list of promises Defendants made when inducing LEJ Management to purchase the property is neither existing nor falsifiable. The essence of this claim is LEJ Management's allegation that Defendants broke a promise, and that allegation cannot support a claim for fraud.

For those reasons, the Court **denies** Defendants' Motion to Dismiss as to LEJ Management's promissory estoppel claim but **grants** the Motion as to its fraud claim. LEJ Management's fraud claim—Count 3 of its Complaint—is **dismissed**.

## C.    Count 4 – Conversion

Under Indiana Code § 34-24-3-1, one who proves the elements of criminal conversion by a preponderance of the evidence can recover up to three times the actual damages, the costs of the action, and reasonable attorney's fees. *McKieghen v. Daviess Cnty. Fair Bd.*, 918 N.E.2d 717, 723 (Ind. Ct. App. 2010). The elements necessary to establish a civil cause of action for conversion

are found in the criminal conversion statute, although a plaintiff in a civil conversion action need only prove the elements by a preponderance of the evidence.  *Id.*  A person commits conversion by knowingly or intentionally exerting unauthorized control over property of another person.  Ind. Code § 35-43-4-3(a).  Money may be the subject of an action for conversion, so long as it is capable of being identified as special chattel. *Clark-Silberman v. Silberman*, 78 N.E.3d 708, 715 (Ind. Ct. App. 2017). For money to be special chattel, it "must be a determinate sum with which the defendant was entrusted to apply to a certain purpose." *Id.* (quoting *Huff v. Biomet, Inc.*, 654 N.E.2d 803, 836 (Ind. Ct. App. 1995)). "Indiana courts also do not allow claims for conversion in the context of contract disputes." *Id.*

Defendants ask for dismissal of LEJ Management's conversion claim because Indiana does not allow claims for conversion alongside contract disputes and because the money is not a special chattel. (Filing No. 16 at 17.) As for the second argument, Defendants argue that the Complaint's allegation that "Defendants converted the funds provided by Plaintiff to Defendants specifically and expressly for the purpose of rehabilitation of the Rental Property" cannot be distilled to a "determinate sum." The Complaint pleads that these funds "were a determinate sum provided by Plaintiff in the amount of $60,500 and are a special chattel."  (Filing No. 1 at 13.)  But Defendants argue that $60,500.00 was the entire amount of LEJ Management's payment, including not just rehabilitation of the duplex but the deed to the land itself.  (Filing No. 16 at 19.)  Because LEJ Management alleges that only the *portion* of the funds meant for rehabilitation was converted, and because nothing in the purchase agreement specifies how much of the $60,500.00 was meant for rehabilitation, the Defendants claim there is no way to determine the value of that portion of the funds.

LEJ Management responds that "[i]t is the jury's job, not Defendants', to decide the extent to which Plaintiff has been harmed." (Filing No. 23 at 22.)  It argues that it "has pleaded factual allegations sufficient to show that Plaintiff gave a specific and agreed-upon sum of money directly to Defendants to be used for a particular purpose". *Id.*  LEJ Management also says that Defendants presume that the only proper chattel in that case is the portion of the payment that was allocated to rehabilitation, while in reality "Plaintiff has pleaded facts supporting an inference that Defendants converted an amount equal to the purchase price of the rental house" *Id.* at 22-23.

The Court is persuaded by the Defendants argument. LEJ Management alleges that it "purchased a recommended duplex property in Indianapolis for $60,500" and specifically acknowledges that the payment was "inclusive of rehab costs." (Filing No. 1 at 9.)  The Complaint alleges conversion based only on the amount of that figure allocated to rehabilitation costs—it does not allege that Defendants converted the portion of the funds that was allocated toward purchase of the duplex itself and the lot. Neither the Complaint nor the attached purchase agreement identifies what amount was meant to pay for rehabilitation, and thus that sum is indeterminate.  To qualify as special chattel and be subject to a conversion action, money must be a "determinate sum".  The Complaint does not allege facts that would allow a reasonable factfinder to determine what sum was meant to cover rehabilitation costs of the property, and thus it has not stated a claim for civil conversion.  For that reason, LEJ Management's claim for conversion is **dismissed**.

### D.    <u>Count 5 – Negligence</u>

Defendants ask the Court to dismiss LEJ Management's negligence claim on two grounds: (1) the Defendants did not owe a duty to LEJ Management, and (2) LEJ Management's negligence claim is barred by the economic loss doctrine.  To prevail on a negligence claim in Indiana, the

plaintiff must show (1) a duty owed to the plaintiff by the defendant, (2) a breach of that duty, and (3) compensable injury proximately caused by the breach. *Smith v. Walsh Constr. Co. II, LLC*, 95 N.E.3d 78, 84 (Ind. Ct. App. 2018).   "Under the 'economic loss' doctrine, contract is the sole remedy for the failure of a product or service to perform as expected." *Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 152 (Ind. 2005).   The doctrine permits recovery only for personal injury or injury to "other property," *i.e.*, property that is not the subject of the contract. *Id.* at 154.

LEJ Management argues that it "did not receive the benefit of its bargain (a 'turnkey' rental property generating immediate passive income), but also suffered the additional harm of further damage to the property caused by it continuing to sit empty." (Filing No. 23 at 25.)   That injury fits into Indiana's definition of economic loss—"the diminution in the value of a product and consequent loss of profits because the product is inferior in quality and does not work for the general purposes for which it was manufactured and sold." *Gunkel* at 154. Economic loss specifically includes "such incidental and consequential losses as lost profits, rental expense and lost time." *Id.* (quoting *Reed v. Central Soya Co., Inc.*, 621 N.E.2d 1069, 1074 (Ind. 1993)).

Because the only damages identified in LEJ Management's Complaint are economic losses, its negligence claim is barred by the economic loss doctrine.   For that reason, Defendants' Motion to Dismiss LEJ Management's negligence claim is **granted,** and this claim is **dismissed with prejudice**.

**E.    Count 6 – Violation of the Indiana Deceptive Consumer Sales Act**

LEJ Management's last claim is for violation of Ind. Code § 24-5-0.5, the Indiana Deceptive Consumer Sales Act. The statute prohibits a "supplier" from committing "an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction." *Id.* at § 24-5-0.5-3(a).   The parties disagree about whether the transaction at issue in this case is a "consumer

transaction" under the statute. The statute defines "consumer transaction" as "a sale, lease, assignment, award by chance, or other disposition of an item of personal property, real property, a service, or an intangible … to a person for purposes that are primarily personal, familial, charitable, agricultural, or household…." *Id.* at § 24-5-0.5-2(a)(1).

Defendants argue that the sale at issue here is not a consumer transaction because LEJ Management's purposes for making the purchase were not primarily personal, familial, charitable, agricultural, or household. (Filing No. 16 at 21-22.) The Complaint alleges that LEJ Management purchased the property "to be used as investment rental propert[y]" (Filing No. 1 at 1), which Defendants argue does not fall into one of the enumerated categories. The Court agrees.

In response, LEJ Management declines to opine on which of the five categories the purchase falls into. (Filing No. 23 at 26-27.) Instead, it argues that "Defendants have not pointed this Court to any authority providing that an individual purchaser of investment properties or an investment program intended to generate personal profit is not a consumer." *Id.* at 26. LEJ Management draws the Court's attention to *Watkins v. Alvey*, an Indiana Court of Appeals case in which the court determined that victims of a pyramid scheme could proceed with their claim under the Deceptive Consumer Sales Act. 549 N.E.2d 74 (Ind. Ct. App. 1990). *Watkins*, in which the court determined that the proprietors of the pyramid scheme were "suppliers" under the Deceptive Consumer Sales Act, is irrelevant to Defendants' argument, which asks whether the transaction at issue qualifies as a "consumer transaction".

Neither party has presented any caselaw directly bearing on that question, and thus the Court resorts to looking at the plain language of the statute to answer it. The Deceptive Consumer Sales Act plainly states that for a transaction to qualify as a "consumer transaction," the buyer's purpose must be personal, familial, charitable, agricultural, or household. Ind. Code § 24-5-0.5-

2(a)(1).   LEJ Management's motivation for purchasing the property, as pleaded in his own complaint, was to rent the property and collect the rent as investment income.   (Filing No. 1 at 1.) Because investment is not one of the categories enumerated in the Deceptive Consumer Sales Act, the transaction at issue here does not qualify as a "consumer transaction."   LEJ Management has not stated a claim under the Indiana Deceptive Consumer Sales Act, and Defendants' Motion to Dismiss this claim is **granted.** This claim is **dismissed with prejudice**.

### IV.   CONCLUSION

For the reasons set forth herein, the Defendants' Partial Motion to Dismiss (Filing No. 15) is **GRANTED in part and DENIED in part.**   The Motion is **GRANTED** as to Count 3 – Fraud/Deception, Count 4 – Conversion, Count 5 – Negligence, and Count 6 - Violation of the Indiana Deceptive Consumer Sales Act, and these claims are **dismissed**. Defendants' Motion to Dismiss is **DENIED** as to Count 1 – Breach of Contract and Count 2 – Promissory Estoppel.  These claims survive for trial.

The parties should confer with the Magistrate Judge regarding further proceedings, including settlement.

**SO ORDERED.**

Date:   8/28/2020

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Anne Medlin Lowe
RILEY WILLIAMS & PIATT, LLC
alowe@rwp-law.com

James Piatt
RILEY WILLIAMS & PIATT, LLC
jpiatt@rwp-law.com

Molly Elizabeth Harkins
HOOVER HULL TURNER LLP
mharkins@hooverhullturner.com

David J. Hensel
HOOVER HULL TURNER LLP
dhensel@hooverhullturner.com

Amanda L.B. Mulroony
HOOVER HULL TURNER LLP
amulroony@hooverhullturner.com